UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LADISLAO CARDENAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:19-CV-177 |
| | § | |
| RALPH AMATO, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# ORDER AND OPINION

Plaintiff Ladislao Cardenas brings this lawsuit against Defendants Ralph Amato, Anthony Loveland, and Scott Montgomery for common-law fraud, misrepresentation, and civil conspiracy, based on allegations related to the sale and operation of DLS Pharmacy, LLC. (Complaint, Doc. 1) Cardenas alleges that Defendants, to induce Cardenas to sell a controlling share of DLS to Amato's daughter, knowingly made false representations that they would operate DLS ethically and legally after the sale. (*Id.* at 5—6) Cardenas alleges that Defendants then controlled DLS and operated it in an unethical and illegal manner, forcing Cardenas to resign from his employment with the pharmacy.

Defendants move for summary judgment. (Motion, Doc. 33) They argue that Cardenas's claims are "all premised on allegations that Defendants violated specific laws, all of which contain no private right of action, and thus cannot be used to support claims for fraud, misrepresentation, or civil conspiracy as an 'end around'". (*Id.* at 4) Alternatively, Defendants argue that it is "undisputed that there are no allegations by the relevant law enforcement authorities that Defendants have violated the laws as Plaintiff alleges", and that this settled fact precludes Cardenas's causes of action. (*Id.*)

Based on the summary judgment record and the applicable law, the Court concludes that Cardenas's lawsuit is not subject to summary dismissal.

## I. Summary Judgment Facts[1]

In November 2013, Plaintiff Ladislao Cardenas started DLS. (Cardenas Aff., Doc. 35-1, 1)[2] Four years later, he decided to sell the business, and he hired a broker to list the pharmacy. (*Id.*) The broker introduced Cardenas to Defendants Ralph Amato and Anthony Loveland as partners with an interest in purchasing DLS. (*Id.*) Although Cardenas initially planned to sell his entire stake in the pharmacy, Amato suggested that he sell only 70% of his interest and retain 30%. (*Id.*) During the negotiations, Amato represented that he, Loveland, and Defendant Scott Montgomery had patients in the McAllen area and a marketing plan that would make the deal profitable for all. (*Id.*) The purchasing partners, however, "failed to disclose the illegal manner in which they were going to conduct business", and instead represented "that their business practices were legal". (Cardenas Aff., Doc. 35-1, 3—4) They omitted this information and made the false representation "to induce [Cardenas] to sell [his] controlling shares in DLS." (*Id.* at 4)

Ultimately, Cardenas and the partners reached an agreement. About 10 days before the closing, Amato disclosed that his daughter, Melanie Leal Ramirez, would be signing the contract, as Amato wanted her "to become familiar with the pharmacy business". (Cardenas Aff., Doc. 35-1, 1) Amato reassured Cardenas, however, that "the deal was with him". (*Id.*)

In March 2018, Cardenas and Leal signed the Membership Interest Purchase Agreement, through which Leal purchased 70% of DLS and Cardenas retained a 30% interest. (Purchase Agreement, Doc. 35-3, 1, 5) In addition to maintaining an interest in DLS, Cardenas worked there as the pharmacist in charge. (Cardenas Aff., Doc. 35-1, 2)

Shortly after the deal closed, Cardenas observed that Defendants controlled DLS's operations and were conducting business in a manner that Cardenas believed violated federal laws. For example, Defendants used a telemarketing company to cold call patients and transfer

---

[1] The Court construes the facts and inferences drawn from the competent summary judgment evidence in the light most favorable to Cardenas. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).
[2] Defendants object that Cardenas has submitted a "sham affidavit" because Cardenas includes statements contrary to his deposition testimony. (Reply, Doc. 39, 4—10) The challenged statements, however, are not material to the resolution of the Motion, and in this Order and Opinion, the Court does not rely on these statements.

prescriptions without the patients' written consent. (Cardenas Aff., Doc. 35-1, 2) Defendants also had DLS mail diabetic test strips to cities across Texas, including to Dallas, Houston, Austin, and El Paso—beyond the legally-permissible geographic range for such mailings. (*Id.*)

In May 2018, based on his belief that these business practices violated federal laws, and "to avoid engaging in any illegal and unethical activity" that could cause him to lose his pharmacist license, Cardenas resigned.[3] (Cardenas Aff., Doc. 35-1, 2; Resignation, Doc. 35-2) More than a year later, the Defendants closed DLS and left it with debt, "some of which [Cardenas] was personally liable for". (Cardenas Aff., Doc. 35-1, 4)

## II. Procedural Background

In October 2018, Leal and DLS filed suit in a Texas state court alleging various causes of action against Cardenas. In that matter, which is ongoing, Leal and DLS allege that Cardenas breached the Purchase Agreement and other contracts. (Leal Pet., Doc. 5-1, ¶¶ 19—27) They allege that Cardenas made material misrepresentations in the Purchase Agreement, such as failing to disclose all of DLS's debts and liabilities. (*Id.* at ¶¶ 28—31) They also allege that Cardenas misappropriated DLS's intellectual property, causing DLS to lose customers. (*Id.* at ¶¶ 32—34) And they allege that Cardenas has defamed them "in an effort to transfer clients" of DLS to competing pharmacies. (*Id.* at ¶ 36) In addition to compensatory and exemplary damages, DLS and Leal seek a declaratory judgment regarding the parties' respective rights to Cardenas's 30% membership interest. (*Id.* at ¶ 47) Under a Buy-Sell Agreement between Cardenas and Leal, if Cardenas's employment terminated for "any reason other than death or Disability", Cardenas was to "unconditionally offer" DLS his interest at fair market value. (Buy-Sell Agreement, Doc. 5-3, 5—7) Leal and DLS allege he did not do so. (Leal Pet., Doc. 5-1, ¶ 17)

In the state court action, Cardenas has denied DLS's and Leal's allegations, and has advanced a counterclaim against Leal for breach of the Purchase Agreement. He seeks amounts

---

[3] Cardenas submits the report of an expert who opines that DLS's business operations violated several federal statutes. (Van Halem Report, Doc. 35-4) But for purposes of deciding the pending Motion, the Court need not reach whether any law was in fact violated.

3 / 9

that he alleges remain unpaid under the contract, as well as rescission of the Purchase Agreement in its entirety.[4] (Cardenas Counterclaim, Doc. 5-4, ¶¶ 15–16)

In September 2019, Cardenas filed this lawsuit in federal court.[5]

## III. Analysis

Cardenas alleges three causes of action against Amato, Loveland, and Montgomery: claims for common-law fraud, misrepresentation, and civil conspiracy. The Defendants seek summary judgment as to all claims, arguing that Cardenas's causes of action are "impermissibly premised on underlying alleged violations of laws which have no private right of action". (Motion, Doc. 33, 7)

### A. Standard

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows that no genuine dispute of material fact exists, and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine dispute over material facts exists if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party," and the fact at issue might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986). The moving party "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If this evidence is provided, the burden then shifts to the responding party to present affirmative evidence to defeat the motion. *Anderson*, 477 U.S. at 257. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential

---

[4] The Counterclaim leaves unclear whether Cardenas advances these two causes of action in the alternative.
[5] In two separate motions, Defendant Ralph Amato and Defendants Anthony Loveland and Scott Montgomery moved to dismiss, stay, or abate the federal case pending the resolution of the state court action. (Motion, Doc. 5; Motion, Doc. 8) The Court denied the requests. (Order, Doc. 14)

component of its case." *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

Summary judgment is proper where "no disputed facts cloud[] the resolution of the legal issue, and all that remain[s] [i]s to apply well-settled law to the facts." *Loza v. Select Portfolio Servicing, Inc.*, 820 F. App'x 240, 241–42 (5th Cir. 2020).

**B. Analysis**

In their Motion, Defendants do not argue that no evidence supports one or more of the elements of Cardenas's causes of action.[6] Rather, they argue that as a matter of law, Cardenas cannot premise these causes of action on an alleged violation of a criminal statute that contains no private right of action. Specifically, Defendants contend that Cardenas alleges that the Defendants' operation of the pharmacy violated the Civil Monetary Penalties Law, the Anti-Kickback Statute, and the Health Insurance Portability and Accountability Act, none of which authorize a private right of action. According to Defendants, "in the absence of a private right of action, Plaintiff is not permitted to pursue individual claims for alleged violations of laws which contain no private right of action, most especially when there are absolutely no allegations or findings of wrongdoing from the requisite law enforcement authorities." (Motion, Doc. 33, 5)

In support of their legal theory, Defendants cite primarily to three decisions. (Motion, Doc. 33, 8 (citing *Tummel v. Milane*, 787 F. App'x 226 (5th Cir. 2019) (per curiam) and *Adams v. Alcolac, Inc.*, 974 F.3d 540 (5th Cir. 2020), as revised (Sept. 25, 2020)); Reply, Doc. 39, 3 (citing *Serna v. H.E. Butt Grocery Co.* 21 S.W.3d 330, 332 (Tex. App.—San Antonio 1999, no pet.)) An

---

[6] In light of Defendants' argument, the Court need not recite the elements of Cardenas's causes of action. Those elements can be found in the following cases: *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (common-law fraud); *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999) (misrepresentation); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019), reh'g denied (Sept. 6, 2019) (civil conspiracy).

analysis of these authorities, however, reveals that distinguishing factors render them inapplicable to Cardenas's causes of action.[7]

Defendants rely first on *Tummel v. Milane*, 787 F. App'x 226 (5th Cir. 2019) (per curiam). Although the decision does not describe the nature of the plaintiff's claims, the court's initial paragraph provides the relevant summary:

> Plaintiffs allege that defendants conspired to violate certain criminal statutes. Although plaintiffs concede that none of these statutes creates a private right of action, they seek to recover by asserting civil-conspiracy claims under Texas law. Because civil conspiracy is not an independent cause of action, we affirm the district court's decision to dismiss plaintiffs' complaint.

*Tummel*, 787 F. App'x at 226—227. The first sentence in the decision provides the dispositive fact distinguishing the claims in *Tummel* from Cardenas's claims. In *Tummel*, the alleged conspiracy was "to violate certain criminal statutes". In contrast, Cardenas makes no similar allegation. Rather, he alleges that Defendants fraudulently withheld material information from him and made material misrepresentations to him during contract negotiations. The allegedly withheld information included that Defendants intended to operate the pharmacy in a manner that Cardenas considered unethical and illegal. But the "wrong" that Cardenas alleges is not that Defendants acted in an illegal or unethical manner after the deal closed, but that during the negotiations, they fraudulently misrepresented that they would not do so. These allegations differ significantly from the straightforward allegations in *Tummel* that the defendants there conspired to violate a criminal statute.[8]

Defendants next rely on *Adams v. Alcolac, Inc.,* 974 F.3d 540 (5th Cir. 2020), as revised (Sept. 25, 2020). In that case, veterans injured by mustard gas during the Gulf War in Iraq sued a chemical company for civil conspiracy because it knowingly or recklessly sold Iraq a chemical needed to make mustard gas, in violation of a United States federal law. *Adams,* 974 F.3d at 542

---

[7] Defendants also cite to numerous authorities to show that the CMPL, the AKS, and HIPAA do not permit a private right of action. (Motion, Doc. 33, 9–11) Cardenas does not contest that legal principle. Rather, he argues that he is not advancing a private claim under these statutes.
[8] Defendants claim that *Tummel* concerned causes of action for fraud and civil conspiracy (Motion, Doc. 33, 8), but a reading of that decision makes clear that it involved only a conspiracy claim.

(explaining that the sale went through the defendant company's subsidiaries, but the company allegedly "knew or had reason to know that these massive shipments of TDG were likely bound for a prohibited destination"). The district court granted summary judgment to the defendant. On appeal, the Fifth Circuit reaffirmed the principle that under Texas law, a claim for civil conspiracy cannot be premised on an alleged conspiracy to violate a federal law that contains no private right of action. *Id.* at 545. It was undisputed that the plaintiff alleged that the defendant's sale violated the Export Administration Act. Rather than end the analysis there, however, the Fifth Circuit explained that the plaintiffs did not simply and impermissibly allege a conspiracy to violate the EAA. Rather, the veterans alleged "that the EAA violations led to Iraq's use of mustard gas, which they claim constituted battery." *Id.* As a result, the Fifth Circuit proceeded to determine whether some evidence supported a conspiracy claim based on the underlying tort of battery, ultimately concluding that "no evidence [demonstrated] that Alcolac conspired to commit that battery." *Id.* The Fifth Circuit affirmed summary dismissal of the claim, not because the plaintiffs alleged a conspiracy to violate a federal law, but because they alleged a conspiracy to commit a tort and no evidence supported the existence of such a conspiracy. In the current matter, Cardenas alleges that Defendants conspired to deprive him of his shares in the pharmacy, not by violating federal statutes, but by committing fraud and misrepresentation during the contract negotiations. He will need to prove as much at trial, but his allegations do not consist solely of claiming that Defendants conspired to violate federal laws. Rather, he alleges that Defendants committed underlying torts—i.e., common-law fraud and misrepresentation. As a result, *Adams* does not defeat Cardenas's claims either.

Finally, in their Reply brief, Defendants cite to *Serna v. H.E. Butt Grocery Co.* 21 S.W.3d 330, 332 (Tex. App.—San Antonio 1999, no pet.). In that case, a grocery store customer, individually and on behalf of a putative class, alleged that the store had fraudulently concealed its collection of unlawful and excessive sales taxes to induce the customers to purchase goods. Importantly, the trial court construed the plaintiff's claim as one seeking a refund of overcharged

sales taxes. Based on that construction of the cause of action, the trial court dismissed the claim because it sought relief for which the Texas Tax Code provided an administrative process to recover. *Serna*, 21 S.W.3d at 333. The Texas appellate court affirmed, explaining that the plaintiff "apparently intends to obtain a refund of overcharged sales tax along with interest", and that this relief, "although couched under a common-law remedy of fraud[,] is available under the Texas Tax Code." *Id.* In that context, the state Tax Code "afford[ed] an aggrieved taxpayer the only means for claiming or suing for a refund of overcharged sales tax." *Id.* at 335.[9] In other words, in *Serna*, the violation of the Texas Tax Code involved the excessive collection of sales taxes, and the plaintiff impermissibly sought to collect those overcharged sales taxes via a private action, rather than through the prescribed administrative process. In contrast, in the present case, Cardenas does not seek to recover damages measured by a federal criminal statute or for which a federal statute provides an avenue to recover.

In summary, Defendants base their main argument on decisions that are readily distinguishable. They cite to no decision in which a court precluded a plaintiff's claims for fraud, misrepresentation, or civil conspiracy based on allegations analogous to Cardenas's.

Defendants also argue that even if the federal statutes at issue contained a private right of action, Cardenas provides no evidence that the appropriate law enforcement authorities have concluded that Defendants violated any of those laws. (Motion, Doc. 33, 12—16) This argument, however, also misses the mark. Cardenas's claims cannot be construed as pursuing a private right of action under the CMPL, the AKS, or HIPAA. As a result, it is immaterial whether law enforcement authorities have investigated or prosecuted Defendants under those laws. It may be that at trial, Cardenas will seek to prove that Defendants' operation of the pharmacy violated federal laws, in order to demonstrate that the Defendants' alleged representations during contract

---

[9] The court in *Serna* acknowledged that the Texas Tax Code authorized a civil action to seek a refund of overcharged sales taxes, but the claimant first had to exhaust the administrative process that the code provided. *Serna*, 21 S.W.3d at 335.

8 / 9

negotiations were false.[10]  Defendants present no authority indicating that the possible offer of evidence regarding the alleged violation of a law precludes Cardenas from pursuing his causes of action for common-law fraud, misrepresentation, and civil conspiracy.

## IV.     Conclusion

As a result, it is:

**ORDERED** that Defendants Ralph Amato, Anthony Loveland, and Scott Montgomery's Motion for Summary Judgment (Doc. 33) is **DENIED**.

Signed on April 29, 2021.

_____
Fernando Rodriguez, Jr.
United States District Judge

---

[10] Defendants' position assumes that Cardenas will seek to prove as much at trial, but this assumption may not prove accurate, as Cardenas also alleges that Defendants engaged in unethical behavior.  Cardenas may focus his trial strategy on alleged unethical, rather than illegal behavior.